IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SANTANDER CONSUMER USA, INC. f/k/a DRIVE FINANCIAL SERVICES, | § § § § § | |
| Plaintiff, | | |
| v. | § § § § § § | Civil Action No. **3:11-CV-614-L** |
| SHULTS FORD, INC., | | |
| Defendant. | | |

# MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion to Dismiss or to Transfer, filed March 28, 2011. After careful consideration of the motion, response, record, and applicable law, the court determines that it lacks personal jurisdiction over Defendant and that venue is improper in the Northern District of Texas. The court, rather than dismiss for lack of personal jurisdiction or improper venue, hereby **transfers** this action to the Western District of Pennsylvania pursuant to 28 U.S.C. §§ 118(c), 1406(a), and 1631.

## I.   Factual and Procedural Background

On February 22, 2011, Santander Consumer USA, Inc. f/k/a Drive Financial Services ("Plaintiff" or "Santander") filed Plaintiff's Original Petition in the 14th District Court of Dallas County, Texas. Shults Ford, Inc. ("Defendant" or "Shults") timely removed the case to this court on March 25, 2011, based upon diversity jurisdiction. Plaintiff brings a claim for breach of contract against Defendant for its alleged misrepresentation of vehicle conditions and equipment options.

**Memorandum Opinion and Order – Page 1**

Santander is a corporation organized under the laws of the State of Illinois with its principal place of business in Dallas, Texas. Santander is in the business of buying automobile retail installment contracts from automobile dealers such as Shults. In August 2001, Santander and Shults entered into a Non-Recourse Dealer Retail Agreement ("Agreement") in which Shults would submit proposals to sell and assign certain automobile retail installment sales contracts to Santander. In 2007, Shults assigned thirteen separate retail installment sales contracts (the "Contracts") at issue in this suit to Santander. Santander alleges that Shults misrepresented the condition of the vehicles, and the equipment options included with the vehicles, by identifying equipment options that were not included with the vehicles. Santander argues that these misrepresentations violated Shults' warranty under Paragraph 8(J) of the Agreement. Specifically, Paragraph 8(J) states, "The Vehicle and all options therein are accurately described in the Contract and such Vehicle was delivered by Dealer and accepted without condition or reservation by Buyer(s)." Pl.'s App. at 7. Santander alleges that, because Shults's representations regarding the equipment options were false, the terms of the Agreement require Shults to repurchase the Contracts.

Shults is a Delaware corporation with its principal place of business in Allegheny County, Pennsylvania. Shults represents that it is a multi-location automobile dealership with a prominent presence in the Pittsburgh region and that it does not maintain a place of business in Texas. Shults contends that it does not maintain an office or have any employees in Texas, own or lease property in Texas, conduct or solicit any business in Texas, or have any contractual obligations scheduled to be performed in Texas. Shults contends that the Agreement was executed in Allegheny County, Pennsylvania, and that all of the services provided by Shults pursuant to the Agreement were performed in Allegheny County, Pennsylvania.

Shults now moves to dismiss this action for lack of personal jurisdiction and improper venue, arguing that it does not possess sufficient minimum contacts with the State of Texas and that none of the bases for proper venue exists in the Northern District of Texas. Plaintiff disagrees.

## II. Legal Standard

### A. Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a *prima facie* case for the court's jurisdiction over a nonresident defendant. *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When the court rules on the motion without an evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a *prima facie* case that personal jurisdiction is proper, *id.*; proof by a preponderance of the evidence is not required. *International Truck and Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 556 (N.D. Tex. 2003) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)). The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Stuart*, 772 F.2d at 1192. Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). After a plaintiff makes his prima facie case, the burden then shifts to the defendant to present "a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with

due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993). Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990), the court must determine whether (1) the defendants have established "minimum contacts" with the forum state; and, (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas*, 9 F.3d at 418 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475. The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). The "minimum contacts" prong of the inquiry may be subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). Specific jurisdiction is only appropriate when the nonresident defendant's cause of action arises from, or is directly related to, the defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Id.* at 414 n.9.

In evaluating the second prong of the due process test, the court must examine a number of factors in order to determine fairness and reasonableness, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies. *Asahi Metals Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987). As noted above, "once minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Eviro Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp. 2d 720, 725 (S.D. Tex. 1999) (*quoting Burger King*, 471 U.S. at 277). In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id.* (*quoting Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)).

**B.     Venue**

In a diversity action, venue is proper in either a judicial district where the defendant resides, or a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred or in which a substantial part of property that is the subject of the action is situated. 28 U.S.C. § 1391(a)(1)–(2). Venue is also proper in a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. *Id.* § 1391(a)(3).

### III. Analysis

Defendant has moved to dismiss the complaint against it for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for improper venue under Federal Rule of Civil Procedure 12(b)(3). The court will address each issue separately.

#### A. Personal Jurisdiction

##### 1. General Jurisdiction

The exercise of general jurisdiction requires continuous and systematic general business contacts between the defendant and the forum state. *Helicopteros*, 466 U.S. at 416. The court must examine the totality of a defendant's contacts with the forum over a reasonable number of years to determine whether a defendant has established a business presence in the forum. *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999), *cert. denied*, 531 U.S. 917 (2000). Furthermore, "[t]he minimum contacts inquiry is broader and more demanding when general jurisdiction is alleged, requiring a showing of substantial activities in the forum state." *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir.), *cert. denied*, 506 U.S. 867 (1992).

Defendant contends that its contacts with Texas are minimal and do not meet the requirements for general jurisdiction. The court agrees. Defendant does not maintain an office or a regular place of business in Texas, nor is Defendant registered to do business in Texas. Furthermore, there is no indication that Defendant solicits business, advertises or markets its goods in Texas. The contacts referenced by Plaintiff are not the type of continuous, systematic, and substantial contacts necessary to support the exercise of general personal jurisdiction. *See Helicopteros*, 466 U.S. at 416; *see also Central Freight Lines v. APA Transport Corp.*, 322 F.3d

376, 380 (5th Cir. 2003). All of Defendant's alleged contacts with Texas are connected with Plaintiff's claims in this suit. Accordingly, after considering Defendant's contacts with Texas in their totality, the court determines that Plaintiff has not presented a *prima facie* case of general jurisdiction. The court now turns to whether Defendant's contacts give rise to specific personal jurisdiction.

### 2. Specific Jurisdiction

Plaintiff argues that specific jurisdiction exists because the cause of action arises out of Defendant's purposeful contacts with Texas. Plaintiff contends that Defendant purposely established contacts with Texas by entering into the Agreement and assigning the Contracts to Plaintiff, a Texas resident, with the Contracts to be performed in whole or in substantial part in Dallas, Texas. Plaintiff further argues that the exercise of personal jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice.

Defendant argues that Plaintiff cannot establish specific jurisdiction because Shults does not possess sufficient minimum contacts with Texas that directly relate to the cause of action. Defendant asserts that entering into a contract with a resident of the forum state, without more, does not establish sufficient minimum contacts. Defendant further contends that the exercise of personal jurisdiction over Defendant would offend traditional notions of fair play and substantial justice.

To support the exercise of specific jurisdiction, Plaintiff's claims for breach of contract must relate to or arise from Defendant's contacts with Texas. *Helicopteros*, 466 U.S. at 414 n.8. Defendant presents the following facts in support of specific jurisdiction: (1) Defendant entered into the Agreement with a Texas resident; (2) Defendant consented to a choice of law provision mandating Texas law to govern the Agreement; (3) Defendant appointed Santander with power of

attorney; (4) Defendant agreed to indemnify Santander for claims arising from Defendant's conduct; and (5) Defendant assigned at least eighty Contracts, including the thirteen at issue in this suit, to Plaintiff. The court will address each jurisdictional fact in turn.

Specific jurisdiction may not be based upon the mere fortuity of Plaintiff's Texas residency. *See*, *e.g., Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986); *Product Promotions, Inc. v. Coustaeu*, 495 F.2d 483, 497 n.26 (5th Cir. 1974). "Merely contracting with a resident of the forum state does not establish minimum contacts." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007). Plaintiff's unilateral activities in Texas do not constitute minimum contacts if Defendant did not perform any of its contractual obligations in Texas, the contract did not require performance in Texas, and the contract is centered outside of Texas. Accordingly, Defendant's entering into the Agreement with Plaintiff, a Texas resident, is insufficient to form the basis of specific jurisdiction.

Plaintiff next argues that the choice of law provision in the Agreement requiring Texas law to govern any disputes arising from the contract supports the exercise of personal jurisdiction. Specifically, Paragraph 24 of the Dealer Retail Agreement states: "This Agreement shall be interpreted pursuant to the laws of the State of Texas. Should any part of this Agreement be determined to be unenforceable by a court, such enforceability shall not affect the rest of this Agreement." Pl.'s App. at 9. Plaintiff contends that the choice of law provision demonstrates Defendant's deliberate affiliation with Texas and the foreseeability of possible litigation in Texas. A choice of law provision is a relevant factor for determining purposeful activity but is not necessarily determinative. *Jones v. Petty-Ray Geophysical Geosource*, *Inc*., 954 F.2d 1061, 1069 (5th Cir. 1992). A choice of law provision standing alone is insufficient to confer jurisdiction.

*Burger King*, 471 U.S. at 482. The court must examine the quality and nature of a defendant's activities in their totality to determine whether a defendant purposefully availed itself of the privileges afforded by the forum state. *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999). Pennsylvania is clearly the center of the parties' activities. The Contracts at issue were performed in Pennsylvania and involved automobiles purchased, located, and ultimately repossessed in Pennsylvania. Moreover, Defendant never appeared in Texas in connection with the negotiation or execution of the Agreement. Rather, Defendant met and negotiated with Plaintiff's representatives in Allegheny County, Pennsylvania. Consequently, the choice of law provision alone is not determinative as to whether Defendant possesses sufficient contacts with the State of Texas.

Plaintiff also alleges that Defendant purposefully availed itself of the protection of Texas laws when Defendant became Plaintiff's agent through the execution of the power of attorney and by agreeing to indemnify Plaintiff for claims arising from the contract. The court determines that Plaintiff fails to demonstrate that either appointing Plaintiff as power of attorney or agreeing to indemnify Plaintiff was part of an enduring or substantial business relationship between the parties, such that Defendant had purposefully availed itself of the privilege of conducting business with Texas. The power of attorney and indemnification provisions in the Agreement existed for the limited purpose of carrying out the contractual relationship.* Because the power of attorney was

---

*The Agreement indicates that this was a limited power of attorney. Paragraph 7 of the Agreement indicates that its scope is limited to authorizing Plaintiff "to sign and endorse Dealer's name upon any check, drafts, money orders or other forms of payment that may come into [Santander] possession as payment of or on account of any Contract" and "authorizes [Santander] to sign its name to any assignment of any Contract to [Santander] and to sign and endorse Dealer's name on any other instrument necessary to carry out the intent of this Agreement." Def.'s App. at 7.

**Memorandum Opinion and Order – Page 9**

merely incidental to the parties' contractual relationship, it adds little, if anything, to the overall minimum contact analysis.

Finally, Plaintiff contends that Defendant assigned the Contracts for which Santander sues for damages, all of which arise out of Defendant's contacts with Santander, a Texas resident. As noted above, Defendant's entering into agreement with a Texas resident alone is insufficient to constitute minimum contacts. Defendant never appeared in Texas in connection with the negotiation or execution of the Agreement and all activities pursuant to the Agreement were performed in Pennsylvania. Furthermore, the exchange of information and documents in the course of carrying out the Contracts is insufficient to constitute purposeful availment. *Holt Oil & Gas. Corp.*, 801 F.2d at 778. The exchanges with Plaintiff rest on "nothing but 'the mere fortuity that [Plaintiff] happens to be a resident of the forum.' " *Id.* (quoting *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985)).

The court examines the quality and nature of a defendant's activities with the ultimate aim of determining whether such defendant purposefully availed itself of the privileges afforded by the forum state. *Electrosource*, 176 F.3d at 871. "The number of contacts with the forum state is not, in itself, determinative." *Hydrokinetics*, 700 F.2d at 1028. Viewing all of Defendant's contacts in their totality, the court determines that it has not purposefully availed itself of the benefits of the forum state such that it could reasonably anticipate being haled into court in Texas. Because the court concludes that Plaintiff has failed to present a *prima facie* case of specific jurisdiction, it need not address whether the exercise of personal jurisdiction would violate traditional notions of fair play and substantial justice.

### B. Venue

Plaintiff argues that venue is proper under 28 U.S.C. § U.S.C. 1391(a)(2) because a substantial part of the events and omissions giving rise to the lawsuit occurred in the Northern District of Texas. In the alternative, Plaintiff argues that venue is proper because Defendant is subject to personal jurisdiction. Defendant argues that venue is improper because all of the events occurred in Allegheny County, Pennsylvania.

As discuss above, the Agreement was centered and performed in Pennsylvania. Plaintiff does not allege that any other specific events or omissions occurred in Texas. The court must therefore conclude that no alleged event or omission giving rise to this claim occurred in Texas; nor can Defendant be deemed to reside in the Northern District of Texas. For the reasons explained above, Defendant is not subject to personal jurisdiction in this district. Accordingly, the court determines that Plaintiff's assertions of proper venue under Section 1391(a)(1) and (2) are without sufficient basis. Venue is also improper under Section 1391(a)(3) because, as explained, personal jurisdiction does not exist here. The court therefore determines that Defendant has carried its burden under Rule 12(b)(3).

### IV. Conclusion

For the foregoing reasons, the court determines that Defendant Shults does not have sufficient contacts with the State of Texas to establish general or specific jurisdiction over it and that venue is improper in this district. While Defendant is entitled to dismissal of this action, the court concludes that it is in the interest of justice to transfer this action to a district in which it could have been brought originally. Accordingly, the court, rather than dismiss for lack of personal jurisdiction or improper venue, hereby **transfers** this action to the Western District of Pennsylvania pursuant

to 28 U.S.C. §§ 118(c), 1406(a), and 1631. The clerk of the court shall effect this transfer in accordance with the usual procedure.

**It is so ordered** this 30th day of June, 2011.

Sam A. Lindsay
United States District Judge